UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DONNA S. BRANDY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 4:20-CV-193 AGF |
| ST. LOUIS COMMUNITY COLLEGE, | ) ) ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court upon the motion of self-represented plaintiff Donna S. Brandy for leave to commence this action without prepayment of the required filing fee. Having reviewed the motion and the financial information submitted in support, the Court will grant the motion and waive the filing fee. *See* 28 U.S.C. § 1915(a)(1). Furthermore, after reviewing the complaint, the Court will dismiss this matter without prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2).

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, is malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a

complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

When reviewing a *pro se* complaint under 28 U.S.C. § 1915, the Court accepts the well-plead facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even *pro se* complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the *pro se* plaintiff that assumed facts that had not been pleaded).

**The Complaint**

Plaintiff Donna S. Brandy brings this employment discrimination lawsuit against her former employer, St. Louis Community College. Plaintiff was employed by defendant College from June 2009 until her alleged constructive discharge on June 3, 2019. At the time of discharge, plaintiff was in the position of "Student Activities Assistant 1" at the College. ECF No 1-4 at 2. Plaintiff alleges that between November 2018 and June 2019, she was harassed and retaliated against, with threat of termination, after she filed complaints with the union. ECF No. 1 at 3-5. Plaintiff details her allegations in the form complaint and in attached exhibits which "support the retaliation and harassment" allegations. *Id.* at 6.

According to plaintiff, in November 2018, Gwendolyn Nixon (presumably plaintiff's supervisor at defendant College) complained to plaintiff about her body language and behavior during two work meetings. ECF No. 1 at 5. Nixon formalized her reprimand and future

behavioral expectations in a letter to plaintiff.  ECF No. 1-5 at 1-2.  In that letter, Nixon states that plaintiff displayed inappropriate and unprofessional negative behavior at two recent meetings with college student club leaders.  In one meeting, Nixon states that plaintiff made a statement under her breath and held a notebook in front of her face.  In another, plaintiff blurted out a question which demonstrated a lack of support for a decision made by Nixon, and when asked to help with a task that plaintiff had been responsible for in the past, plaintiff stated that she would not do the task by herself.  Nixon described plaintiff's subsequent behavior at that meeting to be unhelpful and unresponsive to questions from student leaders.  *Id.*  According to handwritten notes on the letter of reprimand, Nixon met with plaintiff on November 26, 2018, to discuss the letter's content.  *Id.* at 2.  At that meeting, plaintiff refused to sign the letter or even accept a copy of the letter.  *Id.*

Plaintiff includes a handwritten response to Nixon's letter of reprimand, disputing the allegations of the letter.  ECF No. 1-5 at 3-5.  Plaintiff denies holding a notebook over her face during a meeting, but she admits to holding "a piece of paper" over her face in order to hide her facial expression of shock and disbelief brought on by some of the comments made by meeting participants.  Once plaintiff was able to regain her composure, she says that she took the paper down.  Plaintiff denies that she displayed any negative behavior with her body language during the meeting.  Plaintiff also admits to asking a question at the second meeting as to who the decision-maker was on a decision about consolidating student club parties.  Although Nixon alleges that plaintiff should have known that Nixon was the decision-maker prior to the meeting because of information sent by email, plaintiff complains that she was simply asking a question at the meeting to get information, not to be unsupportive or demonstrate inappropriate behavior.  Plaintiff admits that when asked about completing a certain task, she replied, "this is not a Donna Brandy Holiday Party, this is a SGA Holiday Party so I'm not doing this by myself."  *Id.* at 4.

Plaintiff complains that Nixon had previously informed plaintiff not to question decisions made by Nixon, even when they negatively affected the College students, because they were final.  Plaintiff asserts that her actions and words were taken out of context and misconstrued.  Plaintiff states that she displayed a good attitude and professional behavior in the meetings, even when she disagreed with what Nixon was saying or doing.  ECF No. 1-5 at 5.

In December 2018, plaintiff alleges that Nixon played a recording of plaintiff during a work meeting for a fellow employee and showed the employee the November letter of reprimand.  At that time, plaintiff states that she filed a grievance with the union.  In the following month, plaintiff was removed from her job duties and required to attend "EAP sessions."  ECF No. 1 at 5.

Two months later, in March 2019, plaintiff was told that she could not attend a school field trip, in front of College students and only half an hour before trip departure.  ECF No. 1 at 5.  That same month, plaintiff was "written up" for being on her phone during breaktime.  *Id.*  Plaintiff was required to attend mandatory training or face termination.  Plaintiff reported this incident to her union as well.  *Id.* at 6.

Plaintiff included a typewritten "Addendum" dated April 2, 2019, which provides further detail on the events of March 2019.  ECF No. 1-5 at 6-8.  Regarding the phone write-up, plaintiff complains that she was "in utter shock that taking a break at my desk and looking at my phone was now considered inappropriate."  After the incident occurred, Nixon heard plaintiff "talking out loud to [herself]" about the write-up.  Around that same time, plaintiff "sat down to talk to a student worker" and Nixon immediately called plaintiff into her office to remind her about confidentiality.  *Id.* at 6.

Plaintiff was ill and under a lot of stress in the month of March 2019.  She alleges that Nixon's complaints about inappropriate behavior were just plaintiff being "not completely

- 4 -

recovered from being sick" and having a very low energy level.  ECF No. 1-5 at 6.  Plaintiff requested medical leave to have annual check-ups completed.  ECF No. 1 at 6.  When plaintiff "needed more treatments," she requested additional leave but did not receive an immediate response from human resources.  When plaintiff filed for leave under the Family Medical Leave Act, she was approved but her pay was docked for previous leave.

Plaintiff admits to accidently missing a meeting in March 2019, but she blames this on a "lack of communication … since January 2019."  ECF No. 1-5 at 7.  Plaintiff believes that the problems at work were "happening to [her] because there is a lack of communication" between herself and "management and my co-workers."  *Id.* at 6.

Plaintiff alleges that from March to June 2019, the office environment at work had become "toxic" and she was constantly afraid that her behavior would be construed as inappropriate.  ECF No. 1 at 6.  Plaintiff described work as the "type of environment where no one is talking to me."  ECF No. 1-5 at 7.  Plaintiff complains that Nixon "only decides what inappropriate behavior is when she sees something that she deems is inappropriate."  ECF No. 1-5 at 6.  When plaintiff asked Nixon "what is inappropriate behavior," she was told by Nixon that it "is anything that goes against [College] policy."  *Id.*  Plaintiff felt that Nixon was disparaging her to other employees, while plaintiff could not defend herself because she was told that the matter had to remain confidential.  ECF Nos. 1 at 6, 1-5 at 7-8.  Plaintiff alleges that all her problems at work were a result of Nixon "lying and twisting the truth … to fit her vendetta and retaliation" against plaintiff.  ECF No. 1-5 at 8.

By June 2019, plaintiff felt forced to leave her job at defendant College due to the amount of stress that she was experiencing at work.  Upon submission of her two-weeks' notice, plaintiff was immediately denied access to defendant's computer system.  *Id.*

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Missouri Commission on Human Rights ("MCHR") on November 14, 2019, complaining about unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964.  ECF No. 1-4 at 2.  Plaintiff alleged that she was "subjected to various adverse actions in retaliation for correcting a student's actions in September 2018."  *Id.*  Plaintiff lists some of the adverse actions suffered as: "constantly being watched, forced participation in the EAP program, and multiple false accusations of inappropriate behavior."  *Id.*  According to plaintiff, these actions led to her constructive discharge in June 2019.  Plaintiff received a right-to-sue letter from the EEOC dated November 25, 2019.  ECF No 1-3.  On December 26, 2019, the MCHR terminated its investigation and administratively closed plaintiff's case, determining that the MCHR "lacks jurisdiction over this matter because the complaint did not involve an activity covered by the Missouri Human Rights Act."  ECF No. 1-4 at 1.

Plaintiff filed her employment discrimination complaint with this Court on February 3, 2020.  For relief, plaintiff seeks an unspecified amount of monetary damages.  ECF No. 1 at 7.

**Discussion**

Plaintiff's employment discrimination complaint, based on allegations of retaliation and harassment, fails to state a claim upon which relief may be granted and will be dismissed under 28 U.S.C. § 1915(e)(2).  Plaintiff alleges neither membership in a protected class, nor any illegal grounds as a basis for discrimination.  On her form employment discrimination complaint, plaintiff does not indicate that she seeks relief under any of the suggested legal statutes.  *See* ECF No. 1 at 1-2.  However, plaintiff does mention Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, on both her EEOC charge of discrimination and the civil cover sheet she filed when initiating this matter.  *See* ECF Nos. 1-1, 1-4 at 2.  Nevertheless, as discussed below, the Court finds that the facts alleged by plaintiff fail to state a claim for relief under Title VII.

Title VII makes it unlawful for an employer to discriminate against an individual because of her race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2. To establish a prima facie case of Title VII discrimination, a plaintiff must show that she: (1) is a member of a protected class; (2) was meeting her employer's legitimate job expectations; (3) suffered an adverse employment action; and (4) was treated differently than similarly situated employees who were not members of her protected class. *Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013) (citation omitted). Plaintiff's allegations fail to meet the first requirement. Plaintiff does not allege that she was discriminated against based on any of the Title VII characteristics. In fact, plaintiff never specifies her own race, color, religion, or national origin; nor does plaintiff allege membership in any protected class. This Court cannot assume facts that are not alleged in the complaint. *Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004). In addition, plaintiff never details any disparate treatment and the complaint is void of any allegations that similarly situated employees of a different race, color, religion, gender, or national origin were treated more favorably.

Plaintiff claims that supervisor Nixon's negative personal feelings towards plaintiff led to a toxic work environment which plaintiff felt compelled to remove herself from by quitting her job. Even assuming Nixon's allegations against plaintiff were unfounded and unjustified, that does not make Nixon's actions illegal discrimination. As for Nixon's November 2018 allegations of inappropriate behavior during two meetings, plaintiff admits to putting a piece of paper in front of her face during a meeting and responding to a task request by clarifying that she would not complete it alone. Plaintiff simply does not believe such behavior was inappropriate, whereas Nixon does. As for the phone write-up, plaintiff admits to being on her phone at her desk during a break. Plaintiff just does not believe such action is against policy, thereby justifying a write-up.

Plaintiff also admits to missing a March 2019 meeting.  Overall, there is just no indication that any of the tension or disputes at work were rooted in any illegal discriminatory animus.

To state a claim of Title VII harassment, plaintiff must allege that: (1) she is a member of a protected group; (2) that there was unwelcome harassment; (3) that there was a casual nexus or connection between the harassment and her membership in the protected group; and (4) that the harassment affected a term, condition, or privilege of employment.  *See Watson v. CEVA Logistics U.S., Inc.*, 619 F.3d 936, 942 (8th Cir. 2010) (citation omitted).  Again, plaintiff does not state any allegations indicating that she is a member of a protected group and therefore, her claim of harassment fails.

Finally, Title VII prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e–3(a).  To establish a prima facie case of Title VII retaliation, plaintiff must show that: (1) she engaged in protected conduct; (2) she suffered a materially adverse employment action; and (3) the adverse action was causally linked to the protected conduct.  *Jackman*, 728 F.3d at 804 (citation omitted).  Here, the Court can discern no protected conduct engaged in by plaintiff for which she was suffered retaliation.  To the extent plaintiff seeks to claim that her complaints to the union were protected conduct, such a claim fails.  Although plaintiff has a right to complain to her union, her complaints were not opposing a practice made unlawful by Title VII.  As discussed above, none of Nixon's actions towards plaintiff were based on plaintiff's membership in a protected class, nor did they exhibit a discriminatory animus.  Therefore, when plaintiff complained about Nixon's treatment to her union, she was not engaging in protected conduct under Title VII.

For all these reasons, plaintiff's complaint fails to state a claim for employment discrimination based on Title VII.  This case will be dismissed under 28 U.S.C. § 1915(e)(2).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed *in forma pauperis* [ECF No. 2] is **GRANTED** and the filing fee is waived.

**IT IS FURTHER ORDERED** that the Clerk shall **not** issue process or cause process to issue upon the complaint because the complaint fails to state a claim upon which relief can be granted under 28 U.S.C. § 1915(e)(2).  Plaintiff's claims against defendant St. Louis Community College are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 3] is **DENIED as moot**.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 11th day of May, 2020.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE